ADOPTION OF A MINOR. January 31, 1984. *Adoption*, Dispensing with parent's consent.

The foster parents of the minor child appeal from a decree entered by a Middlesex County probate judge denying their petition for adoption (G. L. c. 210, § 3[a]) and allowing the petition of the minor child's biological mother for custody of the child. The attorney appointed for the minor child joins in the appeal. Appellants contend: (1) that the probate judge erred in failing to apply the standard of the best interests of the child; (2) that certain of the probate judge's findings are clearly erroneous; and (3) that the probate judge erred in ruling that the biological mother's parental rights could not be terminated absent a finding of her unfitness by "clear and convincing evidence," see *Santosky* v. *Kramer*,

455 U.S. 745, 769-770 (1982), because that standard does not apply where a private party, rather than the State, seeks to terminate the biological parents' rights. We affirm.

The minor child, a girl, was born in Pennsylvania on December 5, 1977. The unmarried parents took the child on their travels across the country during most of the child's first two years. During that time, the father had a serious drinking problem, requiring his hospitalization on one occasion, and the mother had psychological problems, requiring her hospitalization on at least two occasions. In 1979, after the parents had moved to California with the child, the father took the child to Pennsylvania, without the mother's knowledge or consent. The mother soon followed them to Pennsylvania. Later in 1979, the father again absconded with the child, this time to Florida. There, when the father encountered certain difficulties, Florida authorities found that he was without funds and without immediate or prospective means for support and took the child from him. He falsely informed the authorities that the child's mother was dead and later requested that his former sister-in-law (the present foster mother) receive custody of the child. In May, 1980, after an investigation (through social service agencies in Pennsylvania and Massachusetts) of the present foster parents, the biological mother, and the child's paternal grandmother for potential placement of the child, a Florida court transferred custody of the child to the foster parents. The biological mother, at that time, was under the care of a psychiatrist who wished to withhold for two months his opinion on whether the mother should receive custody of her child. The Florida court retained jurisdiction until December, 1980, when it ordered that custody of the child remain with the foster parents. The foster parents filed their petition for adoption in Massachusetts in November, 1980. The biological mother, traveling from Pennsylvania, appeared pro se to oppose the foster parents' petition in February, 1981; she filed her own petition for custody of the child in April, 1981. The petitions were heard by a probate judge in January, 1983. In June, 1983, the judge issued his findings of fact and rulings of law, and entered the decree dismissing the foster parents' petition and ordering transfer of custody to the biological mother, to be coordinated by Pennsylvania social service agencies. The child was then approximately five and a half years old.

The probate judge found, among other things: that the child is in excellent emotional and physical health; that the biological mother is "able and prepared to resume caring for her daughter"; that the foster parents have "the ability, capacity, fitness and readiness to assume parental responsibility" for the child; that the length of time which the child has spent away from her biological mother does not justify the termination of the mother's parental rights; and that, on balance, it is in the child's best interests to be returned to her biological mother.

1.  The probate judge properly applied the standard of the best interests of the child.  The judge found that the child is in excellent emotional and physical health.  Cf. *Bezio* v. *Patenaude,* 381 Mass. 563, 575 (1980).  Contrast *Custody of Three Minors, ante* 969.  He further found that the biological mother is a fit parent.  His finding that the biological mother is a fit parent is supported by numerous subsidiary findings, e.g., that the biological mother is now psychologically stable, that she is a very responsible employee, that she can provide the child with a suitable living environment, and that she is willing to accept services offered by a Pennsylvania social service agency.  Contrast *Petition of Catholic Charitable Bureau to Dispense with Consent to Adoption,* 13 Mass. App. Ct. 936, 937 (1982).  Those findings are supported by the November, 1982, home study of the mother conducted by the same Pennsylvania social service agency now offering services to the mother and the child.  That agency had had an opportunity to observe the mother over a period of several months.  Finding both the foster parents and the biological mother "fit" to parent the child, the judge concluded that the child's best interests would be served by returning her to her biological mother.

Contrary to the appellants' contention, a probate judge may allow the bond between a child and a biological parent to tip in favor of the biological parent the balance between parties fit to have custody.  "In invoking the 'best interests of the child' the Legislature did not intend to disregard the ties between the child and its natural parent." *Petition of the New England Home for Little Wanderers,* 367 Mass. 631, 641-642 (1975).  "[T]he interests of the child in being reared with her natural family, as expressed in G. L. c. 201, § 5, and our cases, must take precedence" over the ties of affection formed between the child and her foster parents. *Freeman* v. *Chaplic,* 388 Mass. 398, 408-409 (1983).[1]

2.  We cannot conclude that any of the judge's findings are clearly erroneous, as they are supported by the evidence.  See *Petition of New Bedford Child and Family Service to Dispense with Consent to Adoption,* 385 Mass. 482, 488-489 (1982).  Conflicting evidence was presented on many issues.  The probate judge's assessment of the weight of the evidence and the credibility of the witnesses before him is entitled to deference. *Id.* The judge was not required to accept the testimony of the foster parents' expert. *Petition of Dept. of Public Welfare to Dispense with Consent to Adoption,* 376 Mass. 252, 269 (1978).

3.  Because the probate judge found that the biological mother "cannot be found unfit by clear and convincing evidence, nor by any lesser standard of proof," we need not consider appellants' contention that the pro-

---

[1] We note that the foster parents had held custody of the child for only six months when they filed their petition for adoption.  The elapse of nearly three years before final resolution of this case in the Probate Court is lamentable.  See *Custody of a Minor,* 389 Mass. 755, 764 and n.2 (1983).

bate judge erred in applying the "clear and convincing" standard in determining parental "unfitness". See *Santosky* v. *Kramer*, 455 U.S. at 769-770; *Custody of a Minor*, 389 Mass. 755, 766-767 (1983); *Custody of a Minor (No. 2)*, 16 Mass. App. Ct. 923, 924 (1983). Cf. *Bezio* v. *Patenaude*, 381 Mass. 563, 576 n.10 (1980).

*Decree affirmed.*

*Jeffrey Quinn* for the foster parents.
*Christine Cooney* (*Beverly W. Boorstein* with her) for the minor.
*Maurene L. Golden* for the mother.