PETITION OF CATHOLIC CHARITABLE BUREAU OF THE
ARCHDIOCESE OF BOSTON, INC., to DISPENSE WITH
CONSENT TO ADOPTION.

Suffolk. January 11, 1984. — August 14, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Adoption,* Dispensing with parent's consent. *Minor,* Custody. *Evidence,*
Communication between patient and psychotherapist. *Words,* "Child
custody case."

A proceeding on a petition to dispense with a parent's consent to her child's
adoption is not a "child custody case" within the meaning of the exception
to the psychotherapist-patient privilege, expressed in G. L. c. 233,
§ 20B (*e*), which permits a patient's communications to a psychotherapist
to be disclosed, without the patient's consent, at the hearing of a child
custody case. [740-744]

PETITION filed in the Suffolk Division of the Probate and
Family Court Department on February 19, 1980.

The case was heard by *Yasi, J.*

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Richard B. Klibaner* for the mother.

*William M. Conway* for Catholic Charitable Bureau of the
Archdiocese of Boston, Inc.

ABRAMS, J. At issue is whether a petition to dispense with
a mother's[1] consent to adoption, see G. L. c. 210, § 3 (*b*),[2] is

---

[1] The child's father is deceased.

[2] General Laws c. 210, § 3 (*b*), as amended through St. 1978, c. 552,
§ 36, provides: "The department of social services or any licensed child
care agency may commence a proceeding, independent of a petition for
adoption, in the probate court of Suffolk County or any other county in
which said department or agency maintains an office, to dispense with the
need for consent of any [required] person . . . to the adoption of a child in the

a "child custody case" permitting the disclosure of the mother's communications to psychotherapists. See G. L. c. 233, § 20B[3] (e).[4] A Probate Court judge concluded that the petition to dispense with the mother's consent was a "child custody case" and permitted two psychiatrists who treated the mother to testify to the mother's statements to them. The mother appealed, and we transferred the case to this court on our own motion. We reverse.

The mother, a graduate of Simmons College and Harvard Business School, had been an inpatient and outpatient of Massachusetts Mental Health Center for nearly five years before giving birth to her daughter in August, 1979. When the child was born, the mother was unable to care for her, and the petitioner, Catholic Charitable Bureau of the Archdiocese of Boston, Inc. (CCB), placed the child in a temporary foster home. After six supervised visits, during which the mother was not able to care for the child, CCB in February, 1980, filed a petition to dispense with consent to adoption. See G. L. c. 210, § 3 (b).

---

care or custody of said department or agency. Notice of such proceeding shall be given to such person in a manner prescribed by the court. The court shall issue a decree dispensing with the need for said consent or notice of any petition for adoption of such child subsequently sponsored by said department or agency if it finds that the best interests of the child . . . will be served by said decree. Pending a hearing on the merits of a petition filed under this paragraph, temporary custody may be awarded to the petitioner."

[3] General Laws c. 233, § 20B, as amended through St. 1977, c. 817, states in pertinent part: "[I]n any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition."

[4] General Laws c. 233, § 20B (e), as appearing in St. 1974, c. 240, provides for an exception to the psychotherapist-patient privilege: "In any child custody case in which, upon a hearing in chambers, the judge, in the exercise of his discretion, determines that the psychotherapist has evidence bearing significantly on the patient's ability to provide suitable custody . . . it is more important to the welfare of the child that the communication be disclosed than that the relationship between patient and psychotherapist be protected."

.

At the hearing, the judge heard testimony from two psychiatrists. Each doctor disclosed numerous conversations with, and actions of, the mother during the time she was his patient. The mother made timely objection to the testimony of both doctors on the grounds that the communications were privileged under G. L. c. 233, § 20B, and that a petition to dispense with consent to adoption was not a child custody case. After an in camera hearing, the judge found it "more important . . . that the communication be disclosed than that the relationship between patient and [her psychotherapists] be protected." The judge overruled the objection and heard the testimony of the doctors. The judge, relying on the testimony of the two physicians, entered a judgment allowing the petition to dispense with consent to adoption. On appeal, the mother asserts that a petition to dispense with consent to adoption is not a "child custody case" within the meaning of G. L. c. 233, § 20B (*e*). We agree.

A petition to dispense with consent to adoption differs markedly from a child custody case in terms of the interests affected and the applicable legal standards. "Custody," as statutorily defined, entails "the following powers: (1) to determine the child's place of abode, medical care and education; (2) to control visits to the child; (3) to consent to enlistments, marriages and other contracts otherwise requiring parental consent." G. L. c. 119, § 21, as amended through St. 1978, c. 552, § 28. A transfer of custody may be temporary, see *Civetti* v. *Commissioner of Pub. Welfare, ante* 474, 489-491 (1984), or long term, and is an intervention into family integrity that is justified by the need to protect children at risk. "It is not the quality or character of parental conduct per se that justifies State intervention on behalf of an abused, neglected, or otherwise endangered child. Rather, it is the fact of the endangerment itself. As parens patriae the State . . . acts to protect endangered children." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 591-592 (1981). Thus, in custody proceedings, although the

392 Mass. 738                                      741

Petition of Catholic Charitable Bureau to Dispense with Consent to Adoption.

parent has an important interest[5] in maintaining family integrity, the government interest is greater because it must "[protect] a child from the risk of serious and potentially irrevocable harm." *In re Sabrina M.,* 460 A.2d 1009, 1017 (Me. 1983).

By contrast, when an agency initiates a termination proceeding under G. L. c. 210, § 3 (*b*), the child is already, by definition, "in the *care or custody* of said . . . agency" (emphasis added). The focus of such a proceeding is not whether the parent should be deprived of "custody" in order to safeguard the child's well-being, but rather whether "it would be in the best interests of the child *for all legal relations [with the parent] to be ended*" (emphasis added). *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 119 (1984). "Termination denies the natural parents physical custody, as well as the rights ever to visit, communicate with, or regain custody of the child" *Santosky* v. *Kramer,* 455 U.S. 745, 749, 753 (1982). "When a child is adopted 'all rights, duties and other legal consequence of the natural relation of child and parent . . . except as regards marriage, incest or cohabitation, terminate between the child so adopted and his natural parents and kindred." *Bezio* v. *Patenaude,* 381 Mass. 563, 576 n.9 (1980). In sum, "[f]ew forms of state action are both so severe and so irreversible," see *Santosky* v. *Kramer, supra* at 759, as a termination proceeding. Thus, the argument that the statutory "child custody case" exception to the psychotherapist-patient privilege encompasses petitions to terminate parental rights would ignore the settled distinction between custody and termination proceedings. See, e.g., *In re Cochise County Juvenile Action, No. 5666-J,* 133 Ariz. 157, 159 (1982); *In re A.M.D. & M.D.,* 648 P.2d 625, 639-640 (Colo. 1982); *In re Juvenile Appeal (83-CD),* 189 Conn. 276,

---

[5] Because the loss of custody is a severe loss, we have required the same burden of proof in custody cases as in termination cases. See *Custody of a Minor,* 389 Mass. 765, 766-767 (1983), and cases cited.

The phrase "termination of parental rights" is used to describe proceedings, such as the Massachusetts "petition to dispense with consent to adoption," that "free the child for adoption," *Santosky* v. *Kramer,* 455 U.S. 745, 748-750 (1982), and thereby irrevocably dissolve the natural family.

297-300 (1983); *In re L.E.J.*, 465 A.2d 374, 377 n.5 (D.C. 1983); *In re Adoption of Burton,* 43 Ill. App. 3d 294, 301-302 (1976); *In re Sabrina M.,* 460 A.2d 1009, 1017 (Me. 1983); *In re Adoption of Children by N.,* 96 N.J. Super. 415, 423 (1967); *In re Linda C.,* 86 A.D.2d 356, 360-361 (N.Y. 1982); *Reynolds* v. *Ross County Children's Servs. Agency,* 5 Ohio St. 3d 27, 30 (1983); *In re A.D., R.D., and M.S.,* 143 Vt. 432, 435-436 (1983).

Further, the exception is based on a legislative determination that in instances where "the psychotherapist has evidence bearing significantly on the *patient's ability to provide suitable custody* . . . it is more important to the welfare of the child that the communication be disclosed than that the relationship between patient and psychotherapist be protected" (emphasis added). G. L. c. 233, § 20B (*e*). The Legislature has concluded that, notwithstanding the importance of the psychotherapist-patient privilege, in cases where a child's safety may be at issue, the need to obtain all relevant information is paramount. The Legislature has not, however, reached the same conclusion in balancing the competing interests in other situations, such as a termination proceeding, where the child's immediate well-being is not at stake. This court is not at liberty to substitute its judgment for that of the Legislature by expanding on a statutorily defined exception to the privilege.

Moreover, an examination of the entire statutory scheme concerning State intrusions into family relationships indicates that the Legislature could not have intended to make the psychotherapist privilege unavailable to a parent in a termination proceeding. When the Department of Social Services intervenes in the private affairs of a family in order to assist a child in need of services, the service plan it proposes incorporates the presumption that "[s]eparation of the child from the household even temporarily . . . is an extraordinary measure that shall be considered only as a last resort . . . ." 106 Code Mass. Regs. § 234.053 (1978). If the welfare and safety of the child require removal from the home, the department may seek court intervention. G. L. c. 119, § 23 (C). However, "[a]t every stage of the planning process, the [social] worker

shall search for and encourage the selection of the least restrictive alternative which is in the interest of growth and health, and the eventual return of the youth to his or her family." 106 Code Mass. Regs. § 230.440 (1979).

In its effort to strengthen the family environment, the department or an agency may encourage the parent or the child to participate in psychological counseling. Counseling may aid the parent or the child in handling problems that create family disharmony (e.g., drug or alcohol addiction). Programs that teach the skills needed to behave appropriately as a parent are made available. See, e.g., *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 576-577 (1981). Psychotherapeutic evaluations may be used in assisting the department and the judge to determine a parent's fitness for custody of the child. In each of these endeavors, the interests of the parents, the child, and the department should be identical: strengthening the family in order to provide a safe and healthful environment for the child. When the Department of Social Services, a private welfare agency, or an individual petitions a court under G. L. c. 210, § 3, to dispense with the natural parent's consent to adoption, the cooperative effort between the parent and the intervening agency or individual necessarily ceases, and the relationship between the parent and the government acquires an adversary character.[6]

A construction of G. L. c. 233, § 20B (*e*), which would permit the State to use information obtained as part of a State plan to strengthen the family would place the parent in the no-win situation of making confidential disclosures to a psycho-

---

[6] The government has other sources of information available to termination proceedings, including but not limited to social workers' testimony, see G. L. c. 112, § 135, portions of a parent's hospital records, which are admissible under G. L. c. 233, § 79, see *Bouchie* v. *Murray,* 376 Mass. 524, 528 (1978); see also P.J. Liacos, Massachusetts Evidence 332-335 (5th ed. 1981), as well as the testimony of probation officers assigned to a Probate Court, G. L. c. 276, §§ 85A and 85B; see *Hayden* v. *Hayden,* 15 Mass. App. Ct. 915, 916 (1983). Thus, there is little or no need to use the parents' confidential disclosures made pursuant to a State plan, and made without warning that the disclosures could and would be used against the parent in termination proceedings.

therapist in order to regain custody of the child, and then having the disclosures used against the parent in a termination proceeding. Such a choice would discourage a parent from making use of psychotherapeutic services offered by the State, and would run counter to the Legislature's declaration that "the policy of this commonwealth [is] to direct its efforts, first, to the strengthening and encouragement of family life for the protection and care of children; *to assist and encourage the use by any family of all available resources to this end*; and to provide substitute care of children only when the family itself or the resources available to the family are unable to provide the necessary care and protection to insure the rights of any child to sound health and normal physical, mental, spiritual and moral development" (emphasis added). G. L. c. 119, § 1, as amended by St. 1972, c. 785, § 5. We think it unlikely that the Legislature intended to place parents in a situation where their use of psychotherapeutic services could result in the termination of parental rights.[7] The judgment is reversed, and this matter is remanded for a new hearing, at which the privileged communications between the mother and the two psychotherapists should be excluded.

*So ordered.*

---

[7] Because we concluded that a petition to dispense with parental consent to adoption is not a child custody case, we need not reach any constitutional issues which might arise if the government required the parent to participate in psychotherapy to regain custody, and then used the information obtained as a result of that participation to meet its burden of proof in termination proceedings. We also need not decide whether the psychotherapists would be required to warn parents that their communications would not be privileged and could be used to terminate their parental rights. Cf. *Commonwealth* v. *Lamb,* 365 Mass. 265, 270 (1974).