Petition of the Department of Social Services to Dispense with Consent to Adoption.

# PETITION OF THE DEPARTMENT OF SOCIAL SERVICES TO DISPENSE WITH CONSENT TO ADOPTION
## (and two companion cases).

Essex. February 6, 1986. — May 29, 1986.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Adoption*, Dispensing with parent's consent. *Minor*, Custody. *Evidence*, Communication with social worker, Child custody proceeding.

At the hearing on petitions initiated by the Department of Social Services to dispense with the need for parental consent to the adoption of three minor children the judge correctly ruled that, under exception (*d*) to the social worker privilege created by G. L. c. 112, § 135, a certain social worker, one of seven who had been involved with assisting the family, could testify concerning information she acquired in her professional capacity from the parents and from one of the children. [661-664]

At the hearing on petitions by the Department of Social Services to dispense with the need for parental consent to the adoption of three minor children, the judge was warranted in finding, on clear and convincing evidence, that the failure of the department's repeated efforts to reunite the family had been "proven to be the result of the parents' unwillingness, poor motivation, lack of capacity, unavailability, lack of parental personal qualities and their inability to correct deficiencies in the home environment"; that the parents were currently unfit to care and provide for each of the children; and that adoption would be in the children's best interests. [664-673]

PETITIONS filed in the Essex Division of the Probate and Family Court Department on July 23, 1984.

The cases were heard by *Haskell C. Freedman*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Deborah A. Boggs* for the parents.

*Jura Strimaitis & Griffith J. Winthrop* for Department of Social Services (*Michael D. Gargas*, for the minors, with them).

HENNESSEY, C.J. The parents of three minor children appeal from a decision of the Probate and Family Court to dispense with the need for their consent to the adoption of their children. In their challenge to the decision, the parents contend that the trial judge erroneously admitted testimony of a social worker privileged pursuant to G. L. c. 112, § 135, and that the Department of Social Services (department) failed to prove by clear and convincing evidence that the parents are presently unfit to care and provide for their children. We transferred the cases here on our own motion and now affirm.

The three minors who are the subject of these petitions to dispense with parental consent to adoption have been the subject of two prior care and protection proceedings. A care and protection petition was filed in the Salem District Court pursuant to G. L. c. 119, § 24 (1984 ed.), on January 9, 1981, and temporary custody of the three minor children involved in these cases was given to the department. The children were returned to the parents on December 11, 1981. On June 10, 1982, the care and protection action was dismissed. A second care and protection proceeding was filed in the Lynn District Court on December 15, 1982, and temporary custody of the three minors was again given to the department, where temporary custody currently remains.

The department filed the petitions which are the basis for the present actions to dispense with parental consent or notice of adoption pursuant to G. L. c. 210, § 3 (1984 ed.), on July 23, 1984. These petitions were filed in the Probate and Family Court for Essex County along with plans prepared by the Merrimac Valley Catholic Charities pursuant to G. L. c. 210, § 5A (1984 ed.),[1] for each of the three children. On September 18, 1984, the court appointed counsel for the parents and appointed a guardian ad litem for the children in these cases. The guardian ad litem filed reports with the court on November 21, 1984. A conference was held on January 21, 1985. At the conference,

---

[1] Section 5A of G. L. c. 210 provides that along with any petition pertaining to the adoption of a child under the age of fourteen, the department must submit a report to give the court complete information regarding the proposed adoption of the child.

397 Mass. 659               ·               661

Petition of the Department of Social Services to Dispense with Consent to Adoption.

the Probate Court judge appointed counsel to represent the three children. A hearing was held on February 26, 27, and 28, and March 1, 4, 5, and 6. On June 10, 1985, the judge issued detailed findings of fact and conclusions of law allowing the petitions of the department to dispense with parental consent to, or notice of, adoption. The parents filed notices of appeal on July 8, 1985.

1. *Admissibility of Certain Testimony Pursuant to the Social Worker Privilege Created in G. L. c. 112, § 135.*

The parents first argue that the judge erred in admitting the testimony of Barbara Lund, a social worker who was involved with the parents from November, 1980, until November, 1982, and with the youngest child from June, 1983, until October, 1984, contending that the provisions of G. L. c. 112, § 135, operate to bar her testimony.[2] Section 135 of G. L. c. 112[3]

---

[2] At the hearing on the department's petitions, the parents objected to the testimony of other social workers. While the judge noted the parents' objections to the admission of this testimony as well as their objections to Barbara Lund's testimony, an examination of the transcript reveals that the objections occurred after the direct examination of each of these witnesses had been in progress for some time. Further, the parents appear to have abandoned their argument based on the social worker privilege in connection with the testimony of social workers other than Lund for this appeal. We, therefore, do not address the application of the social worker privilege to the testimony of the other social workers.

[3] General Laws c. 112, § 135 (1984 ed.), provides as follows: "No social worker in any licensed category, including those in private practice, may disclose any information he may have acquired from persons consulting him in his professional capacity except: (*a*) with the written consent of the person or, in the case of death or disability of his own personal representative, other person authorized to sue, or the beneficiary of an insurance policy on his life, health, or physical condition; (*b*) that a licensed certified social worker, including those engaged in independent clinical practice, licensed social worker, or licensed social work associate shall not be required to treat as confidential a communication that reveals the contemplation or commission of a crime or a harmful act; (*c*) when the person waives the privilege by bringing charges against the licensed certified social worker, including those engaged in independent clinical practice, the licensed social worker, or the licensed social work associate; (*d*) to initiate a proceeding under subsection C of section twenty-three of chapter one hundred and nineteen or section twenty-four of chapter one hundred and nineteen or section three of chapter two hundred and ten and give testimony in connection therewith; (*e*) in any other child custody case in which, upon a hearing in

prohibits a social worker from disclosing information acquired in a social worker's professional capacity. One of the exceptions to the general rule of exclusion of § 135, exception (*d*), operates to permit disclosure of the information to which the social worker testified in this case.[4] This exception provides that disclosures of information "to initiate a proceeding under . . . section three of chapter two hundred and ten [petitioning a court for an order dispensing with consent to adoption] and give testimony in connection therewith" are not protected by the privilege. The parents argue that exception (*d*) does not apply to permit Barbara Lund's disclosure of information acquired through her professional involvement with the family because Lund did not bring the petitions to dispense with parental consent to adoption. The parents' reading of the statute is excessively restrictive. Further, the parents' interpretation fails to appreciate the functional aspects of the child protection system and misperceives the nature of proceedings pursuant to G. L. c. 210, § 3.

The exceptions to the social worker privilege reflect a legislative intent to balance the dual goals of protecting confidential relationships with the need to protect the well-being of children. See *Commonwealth* v. *Collett*, 387 Mass. 424, 434 (1982). In proceedings where the ability of natural parents to provide and care for their children is called into question, "the rights of the children to a stable and safe environment assume an importance at least equal to the interest of the parents." *Custody*

---

chambers, the judge, in the exercise of his discretion, determines that the social worker has evidence bearing significantly on the person's ability to provide suitable custody, and that it is more important to the welfare of the child that the information be disclosed than that the relationship between the person and social worker be protected."

This statute was the subject of recent amendments, none of which is relevant to the issues presented by this appeal. See St. 1985, c. 524.

[4] Exception (*e*), concerning disclosures in the context of child custody cases, does not apply in a proceeding to dispense with parental consent to adoption. See *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738, 740-742 (1984) (a petition to dispense with parental consent to adoption is not a child custody case).

*of Two Minors*, 396 Mass. 610, 617 (1986). See *Petition of Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 588 (1981); *Custody of a Minor (No. 2)*, 378 Mass. 712, 721 (1979). See also *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738, 743 n.6 (1984) (social worker testimony a source for information on which the government can rely in termination proceedings). Cf. *Wyman* v. *James*, 400 U.S. 309, 318 (1971) ("The dependent child's needs are paramount"). If the exception is interpreted to permit disclosure of information relevant to the fitness of the parents and the best interests of the children only by a social worker who actually brings a petition seeking an order to dispense with parental consent to adoption, the interest of protecting children reflected in G. L. c. 210, § 3, will be defeated.

Two practical considerations illustrate the problem with the interpretation the parents urge us to follow. First, contrary to the parents' contentions, the G. L. c. 210, § 3, proceeding is not meant to be used to remove children from the custody of their parents on a temporary or emergency basis. Common sense and an examination of the entire statutory scheme relative to the protection of children indicate that petitions to dispense with parental consent to adoption are brought after all other, less drastic means to assist natural parents in developing the ability to provide for their children have failed. Thus, the information required to justify the drastic intervention in family life in which the allowance of a G. L. c. 210 petition would result, necessarily extends beyond the disclosure of specific, isolated incidents or emergency circumstances that usually give rise to initial decisions to remove children from their parents' custody. Proceedings pursuant to G. L. c. 210, § 3, necessarily entail an examination of the entire parent-child relationship as it relates to the current fitness of the parents. Confining the application of exception (*d*) to a single social worker who may have limited or cursory knowledge of the case would not serve the interests of either the parents or the children.

The history of social worker involvement in the instant cases is instructive on the issue of the proper interpretation of exception (*d*). Here no fewer than seven social workers were involved at various points during the department's intervention with the family. Rather than being exceptional, the number of social workers involved in these cases is probably typical, depending on the length of time a family has received services from the department before a petition is filed. Frequently, attorneys or third parties initiate G. L. c. 210 proceedings. Construing exception (*d*) as permitting disclosure only of information acquired by a social worker who may have been in a position to file the petition does not conform to the realities of the provision of social work services in the Commonwealth and would place an undue burden on the department and other agencies when bringing such petitions. The exception would be of little or no value if we were to give it the restrictive meaning favored by the parents here.

2. *Clear and Convincing Evidence*.

The parents argue that the department failed to prove by clear and convincing evidence that they are presently unfit to care and provide for their children. We do not agree. The judge stated that he reached his ultimate conclusion upon clear and convincing proof. His subsidiary findings fully support his ultimate conclusion, and the record in turn supports his subsidiary findings.

We summarize the judge's findings. The father was born in 1955, one of twenty-one children. He dropped out of school two months before graduating from high school. The mother was born in 1959. In 1975, when she was sixteen years old she became pregnant by the father. Subsequently, the parents were married on January 27, 1976. Their first child, a daughter, was born on July 14, 1976. A second child, a son, was born on September 12, 1977. Another son was born on December 29, 1979. The mother was just twenty years old when the third child was born. At the time of trial, the mother was employed as a nurse's aide.

Since 1980, the parents have lived in at least twenty-three different locations, either together, separately, or with friends

or relatives. Testimony at the hearing indicated that the problems the parents experienced in handling marriage and fulfilling their family obligations were due in large part to the young age at which they assumed these responsibilities. Professional testimony indicated that the parents had missed their adolescence and needed time to mature. The financial pressures experienced by the parents also contributed to family difficulties. By November, 1981, the parents both had drinking problems and all three children were experiencing problems with their emotional development. The parents' apartment was dirty and chaotic-looking. Social workers observed old feces in the apartment and beer cans piled in the corner. The parents have repeatedly separated since 1982 due to a variety of marital problems, including the abuse of alcohol, infidelity, physical assaults, employment problems, and family interference. They have been reconciled since the last half of 1984 and, at the time of trial, were living with relatives.

The father had been chronically under-employed as an unskilled laborer throughout the marriage. He has held six jobs since 1980. At the time of trial he was laid off from a job he had held since August, 1984, as a carpenter's helper. He expected to return to the job in the spring of 1985 when the weather improved. In addition to employment related problems, the father has a history of involvement in criminal activity. He was on probation at the time of trial. In November, 1984, he was charged with being disorderly, with assault, and with breaking and entering.

The judge found that the father is an alcoholic, and is currently drinking. In addition, the judge found that the father was poorly motivated to control his problem with alcohol. The judge further found that the father had a violent temper, was a controlling and punitive person, and exhibited a limited understanding of the emotional and behavioral needs of his children, frequently giving the children descriptions of the mother's alcoholism and promiscuous behavior. Further, the judge found that the father's life-style contributed to his inadequacy as a parent and that he remained poorly motivated to resolve his problems or to assume responsibility for the tasks associated with being a parent to his children.

Regarding the mother, the judge found that she had a long history of alcohol addiction, as a result of which she was hospitalized on at least four occasions in 1983 and 1984. Further, he found that the alcoholism impaired the mother's ability to care for the children and that she is poorly motivated to work to resolve her problem with alcohol. The judge also found that the mother's problem with alcohol continued to the time of the hearing. In addition, the judge concluded that the mother was cognitively limited and emotionally immature. He found that she was promiscuous in her relationships with men and that her sexual relations with men other than the children's father were witnessed by at least one child on more than one occasion. The judge also found that the mother had engaged in violent arguments with, and physical assaults against, the father in the presence of the children. Her behavior, he found, contributed to the deterioration of the marital relationship and is an important cause of the behavioral problems currently afflicting the children.

In addition to his specific findings regarding each parent individually, the judge made findings regarding the conduct of visitation between the parents and the children after the children came into the custody of the department for the second time in December, 1982. He noted that visitation was "more or less" regularly completed on a weekly basis with the exception of when the mother was admitted to a detoxification center, or the father's failure to attend on thirteen occasions reportedly due to work conflicts. The judge also noted that the father failed to attend even though the visitation schedule was changed to accommodate his work schedule. Although the judge found the visits to have been beneficial initially, arrangements were made to accommodate separate visits because the parents argued in front of the children. In 1983, the judge found, the visits deteriorated with the children responding poorly and the parents often engaging in activities that did not include the children. Additionally, the judge found that the parents exhibited no motivation or ability to manage the behavior of the children during visits and that little demonstrated affection was exchanged between the parents and the children.

The judge also made specific findings concerning each child. The eldest child, a daughter, spent the first four and one-half years of her life with her parents. As a result of the January 9, 1981, care and protection proceeding, the child was removed from the parents' custody and placed in the custody of the department. During the eleven months she spent in the custody of the department, the child resided in three different foster homes. In the last foster home in which she resided during this period, her two brothers also resided. Regular visitation between the child, her parents, and her brothers took place during this period of separation. This child was returned to her parents along with her brothers on December 11, 1981. In December, 1982, she and her brothers were removed from their parents' custody a second time. She has resided in two different foster homes during that time. Since April 17, 1984, the child has resided in a foster home with the younger of her two brothers.

This child began seeing a clinical social worker affiliated with North Shore Children's Hospital in January, 1984. The child was initially diagnosed has having an adjustment reaction with depressed mood. Later, the diagnosis was changed to include the existence of an adjustment reaction with mixed emotional features of depression and anxiety. The daughter has been observed as being a manipulative child and as being upset and unable to function following visits with her parents. The counsellor has never referred this child for psychiatric hospitalization and the child has never had medication prescribed for her emotional problems. She has been exposed to occasional violence in the home and to sexual activity between her mother and other men, which testimony indicated was upsetting to her. She has difficulty trusting adults. At the time of the termination hearing, the child was enrolled in the second grade and was not enrolled in any special classes. The judge found that her emotional problems were a direct result of the deprivation and neglect she suffered when she was with her natural parents.

The second child, a son, lived with his parents for approximately the first three years of his life. During the first period

of separation from his parents, this child resided in one foster home. He has resided in three foster homes since the department took custody of him, his brother, and his sister in December, 1982. Since March, 1983, this child has resided with foster parents who wish to adopt him.

Since August, 1982, the second child has been receiving counselling from a social worker. He has been diagnosed by the social worker as having a major conduct disorder. This child expresses aggressive and violent behavior during play therapy. There was evidence at the hearing that this son also exhibits violent and destructive behavior during and after visitation with his parents. He requires speech and language therapy and has a limited attention span. Although this child knows and has feelings for his parents, within six months of moving to his preadoptive home he had developed a strong emotional attachment to his preadoptive parents. This child has indicated his desire to be adopted by his preadoptive parents and has expressed a desire to be known by their last name. The judge concluded that the major factors contributing toward his condition were the chaos, neglect, and misconduct he experienced while in the custody of his parents.

The youngest child, another boy, spent the first year of his life with his parents. This child has spent the eleven months during which the children were in the custody of the department in a single foster home along with his brother. He has been placed in four foster homes since the department took custody of the three children in December, 1982. Since August, 1984, he has lived in the same foster home in which his sister has been placed. This foster family does not wish to adopt either of these two children.

The youngest child began counselling with Barbara Lund, a social worker employed by North Shore Children's Hospital, in June, 1983. At the time he began counselling, the child was diagnosed as having an adjustment disorder with mixed emotional features of depression and anxiety. Later this diagnosis was changed to conduct disorder, undersocialized and aggressive. This child is very difficult to manage; he has experienced speech and language problems, and exhibits poor impulse con-

trol. He is destructive and hyperactive and testimony indicated that he would often steal. His behavior improved after his placement in his current foster home, but he had problems dealing with his natural parents. He has repeatedly stated that his parents are not able to take care of him and that his mother has problems with drinking. For this child, also, the judge found that the major factor contributing to his problems was the improper care he received from his parents.

Regarding the service plans the department developed for the family between 1981 and 1985, the judge found that they reflected persistent, diligent, determined efforts more than adequate to the task of reuniting the parents with their children. After cataloguing specific plans and evaluating the parents' performances, the judge concluded that the plans had failed to accomplish the objective of unifying the family, which failure was "clearly and convincingly proven to be the result of the parents' unwillingness, poor motivation, lack of capacity, unavailability, lack of parental personal qualities and their inability to correct deficiencies in the home environment." Further, the judge found that the parents failed to make adequate plans for the care of their children if custody was returned. He found the proposed living arrangement for the family to be inadequate because it was temporary and crowded with other relatives. The judge also concluded that the parents had insufficiently developed plans to engage a caretaker to care for the children while the parents work. He found that the adoption plans for each of the children would best serve the interests of the children.

All the social workers and counsellors rendering opinions at the hearing recommended that the court allow the department's petitions to dispense with the parents' consent to the adoption of the children. The judge appointed a guardian ad litem to investigate the circumstances of the parents and the children and to make reports regarding disposition. She filed reports and testified at the hearing that it was her opinion that the parents were currently, or would soon be, fit to care for the eldest child and recommended that this child be returned to the custody of the parents.

The judge made extensive and detailed findings, supplemented with liberal citation to the record, to support his conclusion that the parents are currently unfit to care for and protect the children and that adoption would be in the best interests of the children. See *Custody of Two Minors*, 396 Mass. 610, 619 (1986); *Petitions of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 22 Mass. App. Ct. 48, 56 (1986). In reaching this conclusion, the judge relied in part on the testimony of Barbara Lund, which we have concluded, *supra*, was properly admitted. The judge declined to accept the recommendations of the guardian ad litem, which were generally more favorable to the parents than any other recommendation, stating that she failed to give sufficient consideration to the reports and recommendations of all the other individuals who testified.

It is worthwhile to summarize the principles circumscribing our review of a judge's decision allowing a petition to dispense with parental consent to the adoption of their minor children. The findings of the judge are to be left undisturbed unless clearly erroneous. *Custody of Two Minors, supra* at 618. *Petition of New Bedford Child & Family Serv. to Dispense with Consent to Adoption*, 385 Mass. 482, 489 (1982). Further, the "judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." *Custody of Two Minors, supra. Adoption of a Minor*, 17 Mass. App. Ct. 993, 995 (1984). While a judge's findings are entitled to deference, a decision to terminate the rights of natural parents must be supported by clear and convincing evidence that the parents are currently unfit to provide care and protection for their children. *Santosky* v. *Kramer*, 455 U.S. 745, 747-748 (1982). Cf. *Custody of Two Minors, supra* at 619; *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984). The judge must enter specific and detailed findings demonstrating that close attention has been given the evidence and that it is in the best interests of the children that their relationship with the parents be terminated. *Custody of Two Minors, supra. Petition of Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 592 (1981).

The parents raise several challenges to the judge's findings of current unfitness, each of which we shall address in turn. First, the parents contend that the department called only two witnesses, the department's social worker assigned to the case at the time of trial and the guardian ad litem appointed by the court, to give testimony regarding the current fitness of the parents. The department's social worker testified that she had not been involved with the case long enough to render *any* opinion regarding the current fitness of the parents. While the guardian ad litem testified that it was her opinion that the parents were currently fit to care and provide for one child, the daughter or the younger son, the judge specifically rejected her testimony, concluding that she failed to give adequate consideration to the recommendations of various social workers that the children be released for adoption. The judge's determinations based on the weight and credibility of the evidence are entitled to deference. *Custody of Two Minors, supra* at 618. *Adoption of a Minor*, 17 Mass. App. Ct. 993, 995 (1984). The judge did not err by refusing to accept the recommendations of the guardian ad litem given the other evidence before the court. Further, the judge's reliance on testimony of a department social worker who had been involved with the family in the very recent past, that is within five months of the hearing, in concluding that the parents are currently unfit, was not clearly erroneous. *Custody of Two Minors, supra* (findings of trial judge are to be left undisturbed unless clearly erroneous). *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption*, 385 Mass. 482, 489 (1982) (same). In addition, it was permissible for the judge to assess "prognostic evidence derived from prior patterns of parental neglect or misconduct in determining future fitness and the likelihood of harm to the child." *Custody of Two Minors*, 396 Mass. 610, 621 (1986). *Custody of a Minor (No. 1)*, 377 Mass. 876, 883 (1979). The evidence provided by the social worker was sufficiently current to be relevant to the judge's determination in these cases.

The parents also challenge the judge's findings regarding the parents' problems with alcohol addiction. He found that

the· father is an alcoholic and "continues to drink frequently consuming at least five (5) or six (6) beers a day." While it is true that no one testifying at the hearing provided direct evidence of the father's current drinking, there was evidence that the father had been drinking as late as January, 1985, and that the father at that time refused the department's suggestions, albeit not requirements, that he seek counselling for alcohol abuse.

In addition, the parents challenge the judge's partial reliance on the mother's Salem Hospital records in finding that she had a long history of alcohol abuse. While the parents did make timely objection to the admission of such records pursuant to G. L. c. 233, § 20B (1984 ed.), the objection was not sustained in its entirety as the parents argue in their brief. In ruling on the objection, the judge agreed that he could not rely on psychiatric records pursuant to G. L. c. 233, § 20B, and that he would confine his use of the records to evidence regarding the mother's medical condition. The parents made no objection to this ruling and we therefore find no merit in the challenge to the judge's ruling the parents make here.

Similarly, we find no merit in the parents' challenges to the judge's findings regarding the existence of little affection between children and parents, the effects of visitation on the children, and the cause of the children's behavioral problems. There was sufficient evidence to support the judge's findings on these issues, and the judge was free to consider and reject contradictory evidence.

The parents' contentions that the judge distorted evidence or drew unwarranted conclusions are not well-founded. First, while it is true that the judge drew a negative inference from the parents' decision to remove the older son from nursery school even though the parents subsequently enrolled him in another program, the negative inference was warranted because social workers objected to the disruption in the child's routine resulting from this change in school. The parents also object to the judge's finding that the parents did not maintain adequate food in the refrigerator in the face of the various explanations for this occurrence presented at the hearing. The judge's finding

was supported in the record and it was within the judge's discretion to discount the explanations the parents offered. In addition, while the judge made no reference to the parents' cooperation with the counselling programs suggested for the children, the essence of the judge's findings indicated that the parents were at times uncooperative in obtaining counselling for themselves and that their failure to make progress in counselling rendered them unfit to care and provide for the children regardless of particular examples of cooperation. The parents' final assertion of error, that the judge failed to consider the effect of terminating the family relationship on each child and the best interests of each child individually, is completely without basis. These issues were adequately addressed in the judge's findings.

The department's burden is a heavy one in cases of this kind. Nevertheless it is clear from the judge's findings, all of which were warranted by the evidence, that the department had, as the judge found, met its burden by clear and convincing evidence. It is also clear that the judge was guided by the primary principles which control in cases of this kind. See, e.g., *Lehman* v. *Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513 (1982); *Santosky* v. *Kramer*, 455 U.S. 745, 758 (1982); *Custody of Two Minors*, 396 Mass. 610, 617-618 (1986). The judge was fully justified in determining that the parents are unfit, and that the children who are the subject of these petitions have lived with uncertainty for most of their lives, and it is now in their best interests that the department be permitted to make permanent arrangements for their adoption.

*Judgments affirmed.*