After a trial, a judge of the Juvenile Court found the mother unfit to parent the child, terminated the mother's parental rights, and approved the adoption plan of the Department of Children and Families (DCF).[3] The mother appeals, arguing that (1) the judge's determination of unfitness is not supported by clear and convincing evidence and that (2) the judge abused his discretion in not ordering more than four posttermination/postadoption visits per year. We affirm.
Background. We summarize the relevant facts and procedural history from the judge's findings, reserving some details for discussion of the issues. The child was born in 2014, to the mother and the father. DCF became involved with the child in August, 2014, following reports made pursuant to G. L. c. 119, § 51A (51A reports), alleging heroin use by the parents in the child's presence. The 51A reports were supported after investigation by DCF. At trial, the mother testified that she was snorting heroin in August, 2014, and had been using it since June, 2014, including while caring for the child. She also admitted to abusing the prescription medication Percocet from 2010 to 2014.
On November 4, 2014, the mother overdosed on heroin while caring for the child, who was just shy of seven months of age. Emergency workers revived the mother and transported her to the hospital with the child. DCF took emergency custody and commenced this proceeding.
While in DCF custody, the child resided with her preadoptive parents except for a brief period between May 8, 2015, and June 27, 2015, during which time DCF perceived the mother to be in general compliance with her service plan and returned the child to the mother's care. On June 27, 2015, the mother struck the father several times while he was holding the child, who was then fifteen months old. Following this incident, DCF again placed the child in the care of her preadoptive parents.
Subsequently, the father returned to living with the mother, having left his sober house. The father reported and the mother testified that they used drugs together in July, 2015. On August 21, 2015, police were called to the mother's home to remove the father after she reported that he had choked and punched her. On August 24, 2015, the mother obtained a restraining order against the father, which was extended after a hearing to September 2, 2016. The judge did not find credible the mother's contention that from July, 2015, to October, 2015, she only used heroin three times. At the end of October, 2015, the mother commenced treatment with a methadone clinic.
In February, 2016, while the restraining order was still in effect, an argument between the mother and the father devolved into the father breaking down the mother's apartment door. After this incident the mother disclosed to DCF that the father had been essentially living with her continuously since May, 2015, contrary to her previous denials of that fact. The mother vacated the restraining order against the father in March, 2016. During February, 2016, through April, 2016, the mother relapsed on opiates and cocaine while the father was living with her. Approximately two months prior to trial the father again broke down the mother's apartment door. On the first day of trial in December, 2016, the mother represented that the father would be moving out on January 1, 2017. He did not and continued to live with her until the trial concluded on January 11, 2017. At the time of trial, the child was approximately two years, eight months of age and had been in DCF custody since about seven months of age (with the exception of the period from May 8, 2015, to June 27, 2015, when as described above the child was returned to the mother's custody).
Discussion. 1. Termination of parental rights. a. Clear and convincing evidence. The mother argues that the judge's finding of her unfitness was not supported by clear and convincing evidence. In determining whether to terminate a parent's rights, a judge must evaluate whether there is clear and convincing evidence that the parent is unfit and, if found to be unfit, whether terminating the legal relationship between parent and child would serve the child's best interests. See Adoption of Nancy, 443 Mass. 512, 514 (2005). To determine whether termination of parental rights best serves the child's interests, "the court shall consider the ability, capacity, and readiness of the child's parents ... to assume parental responsibility." Adoption of Elena, 446 Mass. 24, 31 (2006), quoting from G. L. c. 210, § 3(c ). In reviewing a judge's decision to terminate parental rights, we give the judge's decision substantial deference "and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). There is an abuse of discretion where "the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted). "[T]he 'judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference.' " Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption, 397 Mass. 659, 670 (1986), quoting from Custody of Two Minors, 396 Mass. 610, 618 (1986).
The mother contends that the evidence is not clear and convincing because she cooperated with DCF and complied substantially with her service plans. The mother is to be lauded for the positive steps she has taken to improve her situation. Nonetheless, the judge properly considered the required factors set forth in G. L. c. 210, § 3(c ), and concluded that factors ii, iii, v, vi, viii, and xii were applicable to his determination that the mother is unfit.[4]
The judge found that the mother had failed to remediate her grievous shortcomings, which were demonstrated by her failure to fully address her substance abuse and her inability to remedy the negative effects of domestic violence. Contrary to the mother's argument, the mother failed to comply with service plans provided by DCF throughout the tenure of this case, which included abstaining from illegal substances and drug abuse as well as living separately from the father. The mother acknowledged that her service plans required that the father not live with her, and she testified that she understood the possible negative impact of their relationship on the possibility of her reunification with the child. Nevertheless, despite multiple incidents of domestic violence, the father lived with her for extended periods of time on and off throughout this case and was living with her at the time of trial. Furthermore, the mother had multiple periods of drug use relapse despite her engagement with counseling resources. Based on this record, we cannot conclude that the judge's findings are clearly erroneous.
The mother also challenges five findings of fact, out of ninety-four, underlying the judge's determination of unfitness. We have examined the record and we discern no error sufficient to warrant disturbing the judge's findings.
b. The reasonable efforts of DCF. The mother argues that DCF failed to meaningfully provide her with adequate services. "Before seeking to terminate parental rights, [DCF] must make reasonable efforts aimed at restoring the child to the care of the natural parents. This duty includes a requirement that [DCF] provide services that accommodate the special needs of a parent." Adoption of Uday, 91 Mass. App. Ct. 51, 53 (2017), quoting from Adoption of Ilona, supra at 60-61. "[H]eroic or extraordinary measures, however desirable they may at least abstractly be, are not required." Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). A judge's determination that DCF made reasonable efforts is not reversed unless clearly erroneous. See Adoption of Ilona, supra at 61-62.
Here, the judge was "satisfied that DCF met its regulatory obligations in providing services," found that DCF "continued to offer services and develop service plans" even after the goal changed from reunification to adoption, and further found that the mother sought services on her own, beyond those required in her service plans. The judge found that the mother failed to benefit from these services, in part due to her secrecy and lack of candor, to the detriment of her ability to care for the child. There is no evidence that the provided services were unsuitable or that even if DCF had offered other services, a difference would have been made. The judge found that the mother continued to face the same issues, not due to any alleged failures of DCF, but because of her lack of forthrightness and follow-through. "The [parent's] failure cannot be laid at [DCF's] door." Adoption of Gregory, 434 Mass. 117, 123 (2001).
Based on the record, we cannot conclude that these findings are clearly erroneous and find that the judge's determination is supported by clear and convincing evidence. See Adoption of Ilona, supra. We discern no abuse of discretion in the judge's conclusion that termination of the mother's parental rights is in the child's best interests.
2. Posttermination and postadoption visitation. The mother argues that the judge abused his discretion in ordering only a minimum of four visits per year. Once a parent is established as unfit, the decision whether to grant postadoption visits is left to the trial judge's discretion. See Adoption of John, 53 Mass. App. Ct. 431, 439 (2001). The decision should be based on the best interests of the child. See Adoption of Ilona, supra at 63. Where a preadoptive family has been identified, as here, "a judge must balance the benefit to the child ... with the intrusion that an order imposes on the rights of the adoptive parents."Id. at 64.
Here, the judge found that there was a bond between the mother and the child but also found that the child was very comfortable in her preadoptive placement, which is essentially the only home she has known. We see no abuse of discretion in setting a minimum of four yearly visits.
Decree affirmed.

The father's rights also were terminated. He has not appealed.

We pause to note that the mother has shown affection for the child, and none of the judge's findings negate this. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother does not love the child. The inquiry instead was whether the parent's deficiencies or limitations "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).