NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-426

ADOPTION OF WESLEY.[1]


MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Between 2017 and 2020, the Department of Children and Families (department) filed care and protection petitions as to three of the mother's children -- Wesley and two of his younger siblings.  After a joint trial in 2024, the judge issued a decree terminating the mother's parental rights to Wesley, but not to the other two children.[2]  Because we discern neither clear error nor an abuse of discretion in the judge's determination that the mother was unfit to parent Wesley, notwithstanding the judge's determination that the mother was fit to parent Wesley's two siblings, we affirm the decree.

_____

[1] A pseudonym.

[2] The father's parental rights to the child had already been terminated by the time of the mother's trial.  The father did not appeal from that decision.

Discussion. 1. Standard of review. "To terminate parental rights to a child, the judge must find, by clear and convincing evidence, that the parent is unfit and that the child's 'best interests will be served by terminating the legal relation between parent and child.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011). Clear and convincing evidence means that "[t]he requisite proof must be strong and positive; it must be 'full, clear and decisive.'" Adoption of Chad, 94 Mass. App. Ct. 828, 838 (2019), quoting Adoption of Iris, 43 Mass. App. Ct. 95, 105 (1997). A judge must take into account "a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age," Adoption of Mary, 414 Mass. 705, 711 (1993), and may determine that "[a] parent may be fit to raise one child but not another." Guardianship of Estelle, 70 Mass. App. Ct. 575, 581 (2007). "We review the judge's findings with substantial deference, recognizing her discretion to evaluate a witness's credibility and to weigh the evidence," Adoption of Nancy, 443 Mass. 512, 515 (2005), "and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra. "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it,

2

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Custody of Eleanor, 414 Mass. 795, 799 (1993), quoting Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).

2. Mother's challenges to judge's findings. We are not persuaded by the mother's contention that the judge's findings show that the judge failed to give close attention to the evidence. The findings here, while grouped into paragraphs rather than set forth individually, were "specific and detailed," Adoption of Nancy, 443 Mass. at 514, supported by the evidence presented at the trial, and together established by clear and convincing evidence that the mother is permanently unfit to parent Wesley.[3]

a. Finding 14. "In ascertaining parental fitness, the judge 'may consider past conduct to predict future ability and performance.'" Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021), quoting Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997). The judge did not err in finding that the mother, who has a history of substance misuse, was at risk of returning

_____

[3] "Despite the moral overtones of the statutory term 'unfit,' the judge's decision is not a moral judgment, nor is it a determination that the parent does not love the children." Adoption of Lisette, 93 Mass. App. Ct. 284, 285 n.2 (2018).

to that pattern under the stress of parenting Wesley.  At trial, the mother admitted to using marijuana to help her sleep and for her anxiety.  Where the mother does not challenge the judge's finding that Wesley's exceptional special needs (which we discuss in more detail below) create "a great deal of pressure for his caretakers," it was reasonable for the judge to infer that an increase in baseline pressure on the mother would also risk an increase in her reliance on substances to manage the resulting stress.

We are not persuaded by the mother's claim that the judge "ignored" the testimony of Dr. Karen Clarke, the mother's expert witness on bonding and attachment, that she "found [the mother] to be in a really good place to meet her children's physical and psychological long-term needs."  Where the judge's findings reflect her disagreement with Dr. Clarke's testimony that the mother exhibited "good judgment," was willing to seek supports, and was "open to utilizing those supports," we think it likely that the judge rejected Dr. Clarke's opinion, not that she failed to consider it.[4]  See Adoption of a Minor (No. 2), 367 Mass. 684, 688 (1975) (judge's decision must rest on consideration of "all of the relevant facts").

---

[4] The judge also acknowledged Dr. Clarke's testimony in her finding that Wesley's bond with the mother should be preserved through visitation if possible.

b. <u>Finding 15</u>. The mother's challenge to this finding amounts to a disagreement with the judge's weighing of the testimony of two witnesses called by the department at trial, Dr. Mary English and the department's social worker. We defer to the judge's assessment and discern no clear error in the resulting finding. See <u>Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption</u>, 397 Mass. 659, 670 (1986).

c. <u>Findings 18 and 19</u>. The judge found that the mother had been involved in domestic violence in the past but minimizes it when questioned, as exemplified by her lack of candor about her violent relationship with Wesley's father, and that she had failed to develop insight into the issue despite her participation in domestic violence services. Although, as the judge found, at the time of trial the mother had been in a nonviolent partnership for two years, we cannot say that the judge's finding that Wesley remained at risk of future exposure to domestic violence failed to "flow naturally or logically from the record" or was improperly speculative, given the judge's findings about the mother's history. See <u>Adoption of Katharine</u>, 42 Mass. App. Ct. at 32-33 (judge may use parent's past conduct "to predict future ability and performance"). The mother's reliance on <u>Care & Protection of Laurent</u>, 87 Mass. App. Ct. 1, 8 (2015), for this proposition is misplaced. See <u>id</u>. ("Speculation . . . must stem from 'credible evidence'"

5

[citation omitted]). See also Adoption of Lisette, 93 Mass. App. Ct. 284, 294 n.15 (2018) ("A parent's willingness to ignore or minimize abusive behavior can be an indicator of unfitness, regardless of whether the child is at risk of abuse or witnessing abuse").

d. Finding 20. We discern no error in the judge's finding that the mother's undisputed failure to comply consistently with court-ordered drug screens was predictive of her ability to manage the scheduling and other demands involved in parenting Wesley. The judge's fact-finding role includes the ability to draw reasonable inferences, and this was one such inference. See Adoption of Katharine, 42 Mass. App. Ct. at 32-33. See also Adoption of Daniel, 58 Mass. App. Ct. 195, 202 (2003) ("the mother's lack of forthrightness and credibility, coupled with her demonstrated lapses, justified a concern" that she lacked requisite vigilance regarding children's safety).

3. Evidence of current unfitness. The judge's determination that the mother was permanently unfit to parent Wesley and that termination of her parental rights was in his best interests was supported by clear and convincing evidence, and we discern neither error nor abuse of discretion in the judge's decision. See Adoption of Luc, 484 Mass. at 144.

The judge properly considered the mother's failure to comply with the action plan requirement of drug screening as

6

evidence of her unfitness.  See Adoption of Breck, 105 Mass. App. Ct. 652, 660 (2025) (parent's failure to engage with action plan tasks is relevant to unfitness); Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) ("Evidence of parents' refusal to cooperate with the department . . . is relevant to the determination of unfitness").  We are not persuaded by the mother's contention that because the department failed to offer evidence of any "chronic illegal drug use" after 2018, the screens could not provide useful information about her parental fitness.  On appeal, the mother does not dispute that she has a history of substance misuse.  Insofar as the judge found that the mother minimized that history and failed to appreciate her vulnerability to relapse, the screening requirement was not pointless.  Cf. Adoption of Leland, 65 Mass. App. Ct. 580, 585-586 (2006) (finding no nexus between missed drug screening and unfitness where service plan did not require it and parent had no drug-related charges).  Moreover, there was evidence that when the mother tested positive for substances other than marijuana, she was not transparent on the subject.  We discern no impropriety in the judge's resulting inference that the mother was not being candid with the department about the extent of her substance use through the time of trial, nor in the judge's consideration of that inference in her determination of

the mother's unfitness.  See Adoption of Breck, 105 Mass. App.
Ct. at 658-659.

Moreover, it is apparent from the judge's findings that
evidence of the mother's noncompliance with the screening
requirement was also significant to the judge's analysis of the
mother's inability to adapt her day-to-day schedule to changing
circumstances.  The mother missed the overwhelming majority of
her screens, and her excuses for doing so varied.  As the
judge's findings reflect, Wesley has a "constellation of needs,"
including "complex medical, social, emotional, and behavioral"
concerns that "place[] extraordinary demands on his parents" and
which can only be managed by adhering to a "highly structured
and predictable routine."  It was neither improper nor
unreasonable for the judge to consider the mother's inability to
comply with the relatively straightforward obligation of drug
screening as predictive of a corresponding inability to maintain
the complex schedule that Wesley requires.  See Adoption of
Gregory, 434 Mass. 117, 126-127 (2001) (parent's inability to
learn parenting skills necessary to address child's special
needs is relevant to unfitness).

Nor are we persuaded that the judge erred in finding that
the mother was substantively unable to provide Wesley with the
parenting he requires.  In reaching that conclusion, the judge
properly considered the mother's lack of insight into Wesley's

8

behavioral and emotional needs, see Adoption of Breck, 105 Mass. App. Ct. at 660 (parent's lack of understanding of child's complex medical needs is relevant to unfitness), and the risk that the mother's unrealistic assessment of her own strengths and weaknesses as a parent would put Wesley at risk of neglect or domestic violence.[5]  See Care & Protection of Vick, 89 Mass. App. Ct. 704, 708 (2016) (parent's refusal to acknowledge shortcomings is relevant to unfitness).  Additionally, the judge took into account the fact that the mother's ability to provide adequate care for Wesley -- a task that at the time of trial required the coordinated effort of four adults (his foster parents and grandparents) -- would inevitably be limited by her obligations to care for her four other children, who then ranged in age from one to fourteen.[6]  Given the considerations we have already discussed, and taking into account the judge's

_____

[5] In her brief, the mother argues that the judge's findings are "incomplete" because in them, the judge does not address the report of Jennifer M. Laney, Psy.D., which included Dr. Laney's opinion about the extent and source of the mother's sometimes inaccurate assessments of her own personal strengths and weaknesses.  Where the judge made findings that reflect her awareness of Dr. Laney's psychological evaluation of the mother, we are not persuaded that the judge failed to consider any "troublesome facts" in Dr. Laney's report.

[6] At the time of the trial, the mother had custody of her youngest child and shared custody of her oldest child.  As we have noted, after the trial, the judge ordered that two of Wesley's younger siblings (each of whom has her own special needs) be prepared for reunification with the mother.

determination that it would cause Wesley "irreparable harm" to be removed from the foster family with whom he is now bonded, see Adoption of Daniel, 58 Mass. App. Ct. at 203-204, we discern no reason to disturb the decree terminating the mother's parental rights to Wesley.

Finally, the fact that the judge found the mother fit to parent the two younger children involved in this care and protection action is not inconsistent with the judge's determination that the mother was unfit to parent Wesley. It is well settled that "[p]arental fitness as to one child does not render a parent fit with respect to a different child" where the special needs of the children differ. Adoption of Frederick, 405 Mass. 1, 9 (1989). We are satisfied that the judge paid careful attention to the evidence at trial and that her decision was based on clear and convincing evidence of the mother's

unfitness and on proper consideration of Wesley's best interests.  See <u>Adoption of Gwendolyn</u>, 29 Mass. App. Ct. 130, 136 (1990).

<u>Decree affirmed</u>.

By the Court (Massing, Hand & Allen, JJ.[7]),

Clerk

Entered:  December 16, 2025.

---

[7] The panelists are listed in order of seniority.