PETITION OF THE NEW BEDFORD CHILD AND FAMILY SERVICE
TO DISPENSE WITH CONSENT TO ADOPTION.

Bristol. November 4, 1981. — March 2, 1982.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & LYNCH, JJ.

*Adoption*, Dispensing with parent's consent. *Probate Court*, Jurisdiction. *Constitutional Law*, Equal Rights Amendment.

In an action by a licensed child care agency under G. L. c. 210, § 3, to dispense with the consent of the natural parents to the prospective adoption of their child, a probate judge, after an extensive hearing, acted within his broad, equitable powers in awarding physical custody of the child to her unwed father in conjunction with his denial of the agency's petition [485-487]; the judge correctly applied the best interests of the child standard in awarding custody to the unwed father [487-488]; and the judge's findings of fact on the ability, fitness, and readiness of the unwed father to assume parental responsibility were not clearly erroneous [488-491].

The judge in an action to dispense with the consent of natural parents to the prospective adoption of their child properly denied motions for action on requests for rulings which were not material to the case. [491]

In an action by a licensed child care agency under G. L. c. 210, § 3, to dispense with the consent of the natural parents to the prospective adoption of their child, the agency's argument that the award of custody of the child to her unwed father violated the mother's substantive due process rights to family integrity and to choose freely between abortion and adoption was improper and without merit. [492]

PETITION filed in the Bristol Division of the Probate and Family Court Department on August 27, 1979.

The case was heard by *Jacobs*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*James M. Cronin* for New Bedford Child and Family Service.

*James H. Fogarty* (*Barbara Heckman Hendrie* with him) for the father.

NOLAN, J.   The New Bedford Child and Family Service filed a petition in a Probate Court seeking a decree under the provisions of G. L. c. 210, § 3, to dispense with the consent of the natural parents to the prospective adoption of their child.   After a hearing, the probate judge dismissed the petition and ordered that physical custody of the child be given to the child's father.   The New Bedford Child and Family Service appeals, arguing that the judge erred (1) in awarding custody to the father in a proceeding under G. L. c. 210, § 3, where the custody issue was not raised by the pleadings; (2) in failing to apply the standard of the best interests of the child; (3) in refusing to act on requests for rulings and (4) in making findings of fact which are plainly wrong and conclusions of law which are clearly erroneous. We have examined each of these contentions and find them to be without merit.   We affirm the order of the Probate Court.

The facts are as follows.   The New Bedford Child and Family Service (agency) is a licensed, incorporated agency entitled to bring petitions under c. 210, § 3.   The child involved in this case is Alice Roe (also known as Alice Doe), who was born on November 4, 1978.   She is the child of Maura Doe and Robert Roe.   The parents have never married, but there is no dispute as to Robert's paternity of the child.

Maura was fifteen years old when Alice was born. After the child's birth, for a period of approximately four months, Maura cared for the child in her mother's home.   During this time, Robert visited the child and mother daily.   In March of 1979, Maura experienced emotional problems and admitted herself to the mental health unit of a hospital. During Maura's hospitalization, which lasted approximately two and one-half weeks, Robert and his mother cared for Alice in his mother's home.   During her stay at the hospital, Maura decided to place her child for adoption and gave custody of Alice to the agency pursuant to G. L. c. 119, § 23.

She did not, however, sign the adoption surrender form prescribed by G. L. c. 210, § 2. The agency placed Alice in foster care.

Robert Roe was sixteen years old when Alice was born and was eighteen years old at the time of the judge's decision. He dropped out of school when he was fifteen years old. At the time of the hearing he was living at his mother's home and was employed, working thirty to thirty-five hours a week. Prior to the child's birth, Maura discussed with Robert her wish to place the child for adoption. At the time Robert opposed the idea. In March of 1979 when Maura placed Alice with the agency, Robert smashed the windows of his mother's car and stole a stereo from the home of Maura's mother. He testified that he did these things because of his anger and frustration at Maura's decision to place the baby for adoption.

After Alice was placed in foster care, Robert, together with various members of his family, visited her on a number of occasions, sometimes bringing her gifts. Maura did not visit Alice at her foster home.

Shortly after Alice was placed in foster care, Robert developed a plan to raise Alice in his mother's home. His plan called for his mother to care for the child while he worked. Upon learning that the agency approved his home for visitation but not for placement, Robert developed another plan which involved having the child live with him at his paternal grandparents' home. At the time of the judge's decision Robert's grandmother was sixty-nine years old and his grandfather was seventy-three. Both were in good health and lived together in a three-bedroom house. The grandparents were supportive of Robert's plan and willing to assist him in raising Alice. Robert's mother and one of his aunts were also willing to assist him.

During the course of the hearing the probate judge heard testimony from a number of witnesses including Robert Roe, his mother and his grandmother, Maura Doe and her mother, two caseworkers from the agency, and the person having the foster care of Alice at the time of the hearing.

385 Mass. 482                                    485

Petition of New Bedford Child & Family Service to Dispense with Consent to Adoption.

The agency submitted a plan containing information on a prospective adoptive family. This family was not the foster family caring for Alice at the time of the hearing. The judge had appointed a guardian ad litem for the child on January 11, 1980, and on May 15, 1980, the guardian ad litem assented to the agency's petition.

On August 18, 1980, the probate judge dismissed the agency's petition, effective September 9, 1981. He ordered that the agency retain legal custody of Alice until the effective date and that Robert receive physical custody providing that Robert and Alice reside at the home of Robert's paternal grandparents. The judge suggested that prior to September 9, 1981, the parties file petitions to aid the court in determining the future legal status of Alice. The judge stated that, after September 9, 1981, he would review the situation to decide whether uniting the child with her father was in her best interests. The agency filed various motions including a motion to revoke the custody order, a motion for action on requests for rulings of law which had previously been submitted, and a motion to amend judgment and to vacate the order. All of these motions were denied, after hearing, by the probate judge. The agency then made a motion for entry of final judgment to permit an appeal. On December 19, 1980, the judge entered a decree of dismissal of the petition of the agency, stating that the issuance of a decree dispensing with the consent of Alice's parents would not serve her best interests. The agency has argued an assortment of issues which we treat de suite.[1]

1. *Award of child's physical custody to Robert.* The agency argues that the probate judge was in error in awarding physical custody to Robert, in a proceeding which arose under c. 210, § 3, because § 3 does not contain a provision authorizing the court to award custody to an unwed father,

---

[1] In its notice of appeal, the agency requests review of the denial of its motion to alter or amend the judgment. Its brief contains no argument directed to this issue, and therefore, we do not address it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975); *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958).

and because Robert did not file any pleadings seeking custody.

General Laws c. 210, § 2, provides that a decree of adoption shall not be made without the written consent of the mother of a child born out of wedlock. Section 3 of G. L. c. 210 allows a licensed child care agency having custody of a child to commence a proceeding to dispense with the need for consent to the adoption of the child of any person named in § 2. Section 3 further provides that the court shall issue a decree dispensing with the need for consent if it finds that the best interests of the child will be served by said decree. Section 4A allows an unwed father the right to petition for adoption or custody of his child when the unwed mother consents to an adoption under § 2 or when a decree has issued under § 3 dispensing with the need for her consent. Under a literal reading of the statute, the provisions of § 4A seem to apply only when one of these prerequisites has been met. However, we do not interpret this to mean that, once the issue of custody or adoption is before a probate judge under § 3, the judge is precluded from considering the putative father's rights in determining where the best interests of the child lie. Indeed, § 4A itself contemplates that a father's rights can be adjudicated in a proceeding under § 3, because § 4A states that it does not apply "when a decree has been issued pursuant to section three dispensing with the need of consent of said father."

The Probate Court, as a court of general equity jurisdiction under G. L. c. 215, § 6, as appearing in St. 1975, c. 400, § 55, has "both the power and the responsibility to care for and protect all those persons who, by virtue of some legal disability, are unable to protect themselves." *Custody of a Minor*, 375 Mass. 733, 744 (1978). This court has recognized that when "dealing with matters concerning a person properly under the court's protective jurisdiction, '[t]he court's action . . . is not limited by any narrow bounds, but it is empowered to stretch forth its arm in whatever direction its aid and protection may be needed.'" *Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728,

755 (1977). Stated another way, "the powers of the court to act in the best interests of a person under its jurisdiction, *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 371 Mass. 651 (1976), must be broad and flexible enough 'to afford whatever relief may be necessary to protect his interests.'" *Superintendent of Belchertown State School* v. *Saikewicz, supra* at 756.

In the present case, the issue of Alice's welfare and best interests was squarely presented to the probate judge by the agency's petition. In deciding whether to allow the petition dispensing with parental consent, it was necessary under § 3 that the judge determine the child's best interests. Having made this required determination, the judge acted within his broad, equitable powers when he implemented his determination by awarding physical custody of the child to Robert. There is no merit to the agency's contention that the custody issue was not properly before the judge. When the agency filed its petition under § 3 and asked the court to determine the child's best interests, it placed the custody issue before the court.

It is also significant that the agency does not claim unfair surprise nor does it claim that it would have conducted its case differently had Robert filed a pleading seeking custody. A review of the hearing transcript reveals that a large portion of the testimony went to the custody issue. Robert, his mother, and his grandmother testified and were cross-examined by the agency regarding Robert's plans to care for Alice. Maura also testified to this issue, stating her preference that the child be adopted by a two-parent family and reiterating her opposition to Robert's receiving custody. Given the extensive hearing, testimony and the fact that a petition seeking to dispense with parental consent to adoption was before the judge, we think that he acted within his broad, equitable powers when he awarded physical custody of Alice to her father in conjunction with his denial of the agency's petition.

2. *Standard of the best interests of the child.* The agency next argues that the probate judge, in awarding custody to

Robert, failed to apply the standard of the best interests of the child. The basis for this contention is a portion of the judge's conclusions of law which reads as follows. "It is this Court's first and paramount duty to consult the welfare of the child ([s]ee Custody of a Minor, [375 Mass. 733 (1978)]) and if being raised in the bosom of a natural family is assumed to be beneficial to a child, the natural family must be given an opportunity absent any compelling evidence that the child is being subjected to any substantial risk or peril." The agency contends that this conclusion of law demonstrates that the probate judge shifted the burden of proof to the agency and required it to offer compelling evidence that the child would be at risk in Robert's custody. The agency argues that the correct standard is that Robert should have the burden of proving that granting him custody would be in the best interests of the child.

A reading of the judge's findings of fact, conclusions of law, order and memorandum in their entirety makes it clear that the judge applied the best interests of the child standard. In his findings of fact the judge stated: "After considering the ability, capacity, fitness and readiness of Robert and [Maura] to assume parental responsibility and the plan proposed by the Agency, the Court finds that the issuance of a decree dispensing with the consent of her parents will not serve [Alice's] best interests at this time." In his conclusions of law the judge referred to "this Court's first and paramount duty to consult the welfare of the child." The judge's findings of fact make it clear that he considered many factors in applying the best interests standard to this case and, contrary to the agency's contention, did not focus only on whether Alice would be at risk in Robert's custody. We think that it is clear that the judge applied the best interests standard.

3. *Findings of fact.* The agency wants us to rule that the probate judge's findings of fact on the ability, fitness, and readiness of Robert to assume parental responsibility are clearly erroneous and must be reversed. In deciding this issue we keep in mind that the probate judge was in the best

position to determine the weight of the evidence and credibility of the witnesses. After examining the record, we cannot say that the judge was clearly wrong. We, therefore, do not disturb his findings. *Consent to Adoption of a Minor*, 363 Mass. 537, 541 (1973).

We also decline to reverse the judge's ruling that it is in the child's best interest to reside with her father. We have stated that the best interests standard presents "the trial judge with a classic example of a discretionary decision." *Adoption of a Minor (No. 2)*, 367 Mass. 684, 688 (1975). We have also noted that "[s]tandards of mathematical precision are neither possible nor desirable in this field; much must be left to the trial judge's experience and judgment. Underlying each case are predictions as to the possible future development of a child, and these are beyond truly accurate forecast." *Petition of the New England Home for Little Wanderers*, 367 Mass. 631, 646 (1975). It is clear that the judge, in determining Alice's best interests, also considered Robert's fitness as a parent. The judge found as a fact that "Robert is not unfit to assume parental responsibility." The judge properly considered both Robert's fitness and Alice's best interests in reaching his conclusions, as these two standards are "cognate and connected." *Petition of the New England Home for Little Wanderers, supra* at 641.

From the judge's findings of fact it is evident that he considered many factors in reaching his decision to deny the agency's petition and to award physical custody to Robert. He discussed the caretaking arrangements for Alice for the first four months of her life and the ties established with her parents during that time, Robert's educational and employment background, his occasional anti-social behavior in the past, his history of visitation with Alice since her placement in foster care, the nature of his relationship with Alice, his plans and arrangements for raising Alice in his own family, the conditions in his grandparents' home, the potential involvement of Robert's extended family in Alice's upbringing, Maura's wishes regarding Alice's future, and the agency's plan concerning the prospective adoptive family. The

judge also considered the fact that some disruption in Alice's life was inevitable as the prospective adoptive family was not the foster family then caring for Alice.

The judge, in deciding that dispensing with parental consent to an adoption was not in the child's best interests, referred to this State's policy, found in G. L. c. 119, § 1, of strengthening family life and providing "substitute care of children only when the family itself or the resources available to the family are unable to provide the necessary care and protection." These considerations were appropriately included by the judge. As we noted in *Petition of the New England Home for Little Wanderers, supra* at 646, "Precipitate attempts to force adoption over parental objection simply because foster care has occurred are not consistent with the law and must be avoided." Nor was the judge incorrect in referring to Robert and Alice as a family unit worthy of protection. General Laws c. 210, § 4A, recognizes the rights of a putative father. The United States Supreme Court has made it clear that the interest of a father in the care, companionship, and custody of his illegitimate children is "cognizable and substantial." *Stanley* v. *Illinois*, 405 U.S. 645, 652 (1972). The law has not refused to recognize those family relationships unlegitimized by a marriage ceremony. *Levy* v. *Louisiana*, 391 U.S. 68, 71-72 (1968).

This court has spoken unambiguously in favor of protecting the bond between parent and child in many cases. In *Bezio* v. *Patenaude*, 381 Mass. 563, 576 (1980), the court said that: "[T]he natural bond between parents and children should be accorded great weight. Natural parents should be denied custody only if they are unfit to further the welfare of their children." Speaking to the same principle, the court in *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587 (1981), said: "The resolution of any custody dispute involving a natural parent necessarily begins with the premise that parents have a natural right to the custody of their children." Cast differently, it has been said categorically that the State has no right to attempt "to force the breakup of a natural

family without an affirmative showing of parental unfitness." *Custody of a Minor (No. 1)*, 377 Mass. 876, 882 (1979).

4. *Failure to act on requests for rulings of law*. The agency and the mother filed requests for rulings of law at the end of the trial. Subsequent to filing the requests both Maura Doe and the agency filed motions for action on their requests for rulings. The judge denied the motions, stating that "those requests for rulings which were material to the issues raised in the case were expressly or implicitly addressed by the court in its findings and conclusions dated August 18, 1980." The agency argues that the probate judge's failure to act on the requests for rulings was error. We do not agree.

This court has repeatedly stated that a trial judge sitting without a jury should rule on requests for rulings in such a manner that the requesting party can ascertain, for purposes of appeal, whether the judge applied the correct principles of law in deciding the case. *DiGesse* v. *Columbia Pontiac Co.*, 369 Mass. 99, 103-104 (1975). However, requests for rulings are properly denied where they are rendered immaterial in view of the judge's findings and conclusion. *Liberatore* v. *Framingham*, 315 Mass. 538, 541-542 (1944). See J.R. Nolan, Civil Practice § 733 (1975). In the present case, the judge's findings and conclusions addressed the requests for rulings which were material to the case. The judge complied with the requirements of Mass. R. Dom. Rel. P. 52 (a) for setting forth his conclusions of law separately so that "the thought process which led to his decision is fully articulated." *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 315 (1981).

5. *Constitutional issues*. In the judge's conclusions of law he raised the issue, in a footnote, whether § 2 of c. 210 violates the equal protection clause of the United States Constitution because § 2 requires that an unwed mother consent to the adoption of her child but does not require the consent of the child's father. The parties have argued the issue on this appeal. It is unnecessary for us to decide the constitutional issue at this time. The probate judge did not

make a determination of unconstitutionality nor did he rely on this possibility in making his decision. Robert's rights were fully protected in this case by the judge, and the statute was constitutionally applied to him. We note, however, that G. L. c. 210, § 2, treats unmarried parents differently, according to their sex. Under the Equal Rights Amendment to the Massachusetts Constitution "[a] statutory classification based on sex is subject to strict judicial scrutiny . . . and will be upheld only if a compelling interest justifies the classification and if the impact of the classification is limited as narrowly as possible consistent with its proper purpose." *Lowell* v. *Kowalski,* 380 Mass. 663, 666 (1980). We do not decide whether the statute at issue in this case complies with constitutional requirements but will address that question when it is properly before us.

The agency's final argument is that in making his decision the probate judge violated the fundamental substantive due process rights of the mother to family integrity and to choose freely between abortion and adoption. The agency's argument is improper and transparently without merit. The mother, one of the defendants in this action, has not appealed the probate judge's decision and the agency lacks standing to make these assertions on her behalf. See *Commonwealth* v. *Petralia,* 372 Mass. 452, 454 (1977); *Leffler* v. *Todd,* 316 Mass. 227, 234 (1944). The case before us does not concern the mother's right to choose abortion or adoption, or her right to family integrity. The court became involved in this case long after the child's birth and after the mother had voluntarily placed the child with the agency. At the hearing, the mother asserted her continuing preference that the child be adopted.

*Judgment affirmed.*