ADOPTION OF ADAM. December 2, 1986. *Adoption,* Dispensing with parent's consent, Visitation rights. *Evidence,* Communication between patient and psychotherapist.

The mother of a child we refer to as "Adam" appeals from a Probate Court decision granting a petition of the Department of Social Services (department) to dispense with her consent to adoption.

Adam was born on February 8, 1978. The mother and father lived together but were not married. A second child, a daughter, was born to the couple on June 15, 1981. Adam was first taken into the custody of the department in April of 1982, with the mother's consent, and placed in temporary foster care. On November 18, 1982, the department was awarded temporary custody of Adam on a petition alleging that he was a child in need of care and protection under G. L. c. 119, § 24. On January 7, 1983, a judge of a Juvenile Court found him to be a child in need of care and protection and continued temporary custody with the department. Adam remained in foster care until June of 1983 when he was returned to the custody of the mother. By that time the mother and father were no longer living together. Shortly after Adam's return to his mother's care, she began to live with another man, whom she married in August of 1983. The department again removed Adam from the home in January of 1984 and terminated parental visitation in May, 1984. A new service plan was initiated at that time geared towards Adam's adoption. Adam has resided with the prospective adoptive parents since April of 1985.

On October 26, 1984, the department filed the petition in the Probate Court to dispense with the consent of the parents to Adam's adoption. Pursuant to G. L. c. 210, § 3(*b*), the Chief Administrative Justice of the Trial Court consolidated the petition for trial with the pending care and protection case. General Laws c. 119, § 24. The trial began on March 28, 1985, and lasted twelve days. Numerous reports were admitted in evidence including one from the guardian ad litem, who was a witness. On January 31, 1986, the judge issued separate findings and conclusions in the two cases. In the consent-to-adoption case the judge ordered, among other things, that the parental rights of both the mother and father be terminated. At the same time, without separate findings, he denied a motion filed by the mother for visitation should adoption be allowed. Only the mother appeals, and her appeal is only from the judgment in the adoption case.

1. *Sufficiency of the evidence to meet the requirements of the adoption statute.* The mother claims generally that the judge's conclusions are not supported by clear and convincing evidence. The evidence was as follows. At the time of trial, Adam was a seven year old child of innate vulnerability and special needs. His deficiencies resulted from some physical, and much emotional, abuse experienced by him in his early years at the hands of both of his natural parents. The parents had a stormy relationship marked by frequent fights and separations. The mother blamed Adam for her problems and became negative, punitive, and unnurturing towards him. She frequently told him she hated him, locked him in his room, and made him stand in a corner for hours at a time. As a result of these and other numerous harmful experiences detailed in the evidence, Adam developed a poor self-image and became destructive towards himself and physically aggressive towards others. The department first became involved with him in 1981 after a report under G. L. c. 119, § 51A, was filed by a family psychologist. The department initiated a service plan calling for his attendance at a nursery school and for family therapy. On two occasions in 1982, the mother voluntarily placed him in the department's care for brief periods. On the second such occasion she had been hospitalized for a suicide attempt.

On November 18, 1982, the department initiated care and protection proceedings and placed Adam in temporary foster care. He began to improve and to show signs of more favorable self-image. Both he and his mother were receiving services from the department, including therapy, and sharing visits with each other. In June of 1983, Adam returned to reside with his mother and sister; the biological father had left the household. Within a short time they were joined by the mother's prospective husband. The condition of both Adam and his mother deteriorated badly. Adam became increasingly disturbed as he was treated more negatively, punitively, and uncaringly by his mother. She reached a decision that she did not want Adam living with her. On January 24, 1984, the department again placed him in foster care, where he again improved. The department terminated all visits by the natural mother in May, 1984, on the ground that they caused

"dramatic regressions" in Adam's behavior. There has been no contact between parent and child since then. In August, 1984, the mother was again hospitalized in connection with another suicide attempt. Since April, 1985, Adam has lived in a foster home with a woman who had become familiar with him as the supervisor of the nursery school he had attended; she and her husband have been designated as prospective adoptive parents. Although Adam continues to be vulnerable and to need therapy, he has adjusted well to his new surroundings.

We have reviewed the lengthy record and the judge's detailed findings. We note that the mother has generally been cooperative with the department, that, for the most part, she provided for Adam's physical needs, that she did not act inappropriately during visits with him, that she has made improvements in her life since Adam left the household, and that she appears able to provide care for her daughter. However, all of the experts familiar with Adam, including the guardian ad litem, were of the opinion that the best hope for Adam's normal development is placement in a permanent setting apart from his mother. Based on their studied conclusions that the mother's relationship with Adam is harmful and destructive to him and that the mother has serious emotional problems which render her unfit as a parent to Adam, they recommended adoption.

With due respect for the trial judge's opportunity to observe the witnesses at close range and, on the entire record, we conclude that there was evidence which the judge could find clear and convincing that the mother was currently unfit to serve Adam's best interests; the court could therefore dispense with the mother's consent to adoption. See G. L. c. 210, § 3(c); *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption,* 389 Mass. 793, 799-802 (1983). See also *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption,* 20 Mass. App. Ct. 689, 693-695 (1985). The question is not whether we would have made the same findings on the evidence that the judge did. Since they were not "clearly erroneous," they must be upheld upon appellate review. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); *Petition of New Bedford Child and Family Serv. to Dispense with Consent to Adoption,* 385 Mass. 482, 488-489 (1982); *Custody of Two Minors,* 396 Mass. 610, 619-621 (1986).

2. *Sufficiency of the services provided to the mother by the department.* The mother claims that the department did not comply with the fundamental statutory policy requiring the department to provide a service plan aimed towards "the strengthening and encouragement of family life for the protection and care of children" (G. L. c. 119, § 1, as appearing in St. 1954, c. 646, § 1) and that the department violated its regulations requiring a service plan with the goal of reunifying the family (110 Code Mass. Regs. § 5.08[2][1983]). First, she contends that the department failed to provide her with adequate "therapy." The "therapist" provided by the department was the mother's former caseworker. This was unusual. The record indicates, however, that the "therapist" dealt with the mother intensively and

conscientiously over a period of years and that the mother viewed her services as beneficial. We do not agree with the mother that the department defaulted on its duty in this respect. The mother further contends that the department's refusal to provide services to her after January of 1984 violated its mandate. At that time the plan was to release Adam for adoption. Considering the abundance of services provided the family over the three previous years and the therapist's conclusion that therapy was not effective, we cannot say that the facts support the mother's contention. Once the decision was made within the department to pursue adoption, it was not unreasonable for the department to discontinue some of the services it had been providing. See *Petition of Catholic Charitable Bureau to Dispense with Consent to Adoption,* 392 Mass. 738, 743 (1984).

3. *Evidentiary issues.* Upon the mother's motion, references in testimony to unsubstantiated G. L. c. 119, § 51A, reports were struck from the record. However, the judge denied a motion to strike references in the report of the guardian ad litem to comments of the mother made in response to his questions to her about the § 51A reports. Even if the ruling was erroneous, and we think otherwise, see *Jones* v. *Jones,* 349 Mass. 259, 264 (1965), none of the judge's findings or conclusions appears to be based upon any information contained in the § 51A reports, and, thus, any error is harmless.

The testimony of a psychologist with respect to the mother was admitted in the care and protection case. But for the exception in G. L. c. 233, § 20B(*e*), the testimony would have been privileged. The judge recognized that the same evidence was inadmissible in the proceeding on the petition to dispense with consent to adoption. See *Petition of Catholic Charitable Bureau to Dispense with Consent to Adoption, supra* at 743-744. The mother claims that the findings in the adoption case are tainted by the presence of the psychologist's testimony before the fact finder. There was no error. The judge had the ability to admit and use the evidence for one purpose and not the other, and we take him at his word that he did so. Furthermore, the consolidation of the cases for the purpose of avoiding unnecessary delay has express legislative sanction. G. L. c. 210, § 3(*b*), as amended through St. 1983, c. 437. See also, G. L. c. 211B, § 9 (establishing authority of Chief Administrative Justice to order consolidation pursuant to his or her general authority). For a general discussion, see *Custody of a Minor (No. 1),* 391 Mass. 572, 577-579 (1984). Contrary to the mother's assertion, evidence in the record apart from the psychologist's testimony amply supported the judge's conclusion that the mother was an emotionally disturbed person.

4. *The adequacy and currency of the findings as to the fitness of the mother in particular.* Many of the judge's findings relate to the father, who is no longer a member of the mother's household. She claims that the judge failed in his findings adequately to distinguish the father's fitness from hers. Since the father opposed adoption and was a party to the case at the trial

stage, the judge was required to make findings about his fitness. The full family history was also important for the judge to consider because Adam's present needs are related to that history. The mother's claim that the judge improperly projected onto her the characteristics and actions of the father is not borne out in the findings which specifically address the mother's fitness.

Finally, contrary to the mother's contention, the findings of unfitness are sufficiently current. The mother's life may have changed. She is living with her husband and daughter; they are engaged in therapy; and apparently they are becoming a more stable family. There is no indication, however, that the mother has become fit to nurture Adam, given his particular profound needs, their unrelentingly poor relationship, and the shortcomings caused by her emotional condition. In fact, the trial testimony of the guardian ad litem, who filed a current report during the trial, the mother's therapist, and the mother herself pointed out that the mother's problems persisted. At the time of trial, there was evidence that therapy had been sporadic, that it was often not designed or effective to address the mother's relationship with Adam, and that there was a consistent lack of insight, willingness to take responsibility, and appreciation of or ability to cope with the special needs of Adam. The mother's own testimony revealed her ambivalence about physical custody of Adam. Her attitude continued to be that Adam should be placed in residential treatment until he was twelve or fourteen.

5. *Postadoptive visitation.* The department terminated all visits by the mother in May, 1984. Visitation in the past has been upsetting and harmful to Adam. In the adoption case, the trial judge concluded that visits were "untenable" and "only serve to escalate [Adam's] emotional problems, and cause his behavior to deteriorate." Relying on the undisputed evidence in the record of her cooperation with the department and her generally appropriate behavior during visits with Adam, the mother seeks future visitation rights for herself and Adam's sister. The judge's decision that visitation was not at that time in Adam's best interest, however, is not clearly erroneous. On this record, we are not called upon to decide the issue of future visitation rights. See *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption,* 392 Mass. 696, 703 (1984).[1]

*Judgment affirmed.*

*Barbara Greenlee,* Assistant Divisional Counsel, for Department of Social Services.

*Rebekah J. Crampton,* for the mother, submitted a brief.

---

[1] For a discussion of the alternative relevant considerations and analyses on the issue of postadoption visitation, see Garrison, Why Terminate Parental Rights?, 35 Stan. L. Rev. 423 (1983); Nathan, Visitation After Adoption: In the Best Interests of the Child, 59 N.Y.U. L. Rev. 633 (1984).