## ADOPTION OF HUGO.[1]

No. 98-P-0576.

Suffolk. May 19, 1998. - May 27, 1998.

Present: WARNER, C.J., KASS, & BECK, JJ.

Further appellate review granted, 427 Mass. 1108 (1998).

*Adoption,* Dispensing with parent's consent. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption.

In a proceeding to dispense with parental consent to adoption of a minor, where the Department of Social Services had proposed a plan that the child be adopted by his foster mother, with whom he had resided in a beneficial environment for over a year and with whom his sister also resided, and where the child's parents had proposed a plan that the child be adopted by his aunt, the judge erred in deciding that the best interests of the child were served by placement with the aunt, in light of evidence that the speculative benefits of such a placement were outweighed by the inevitable harm that the child would suffer by removal from his beneficial home environment. [865-868]

PETITION filed in the Boston Division of the Juvenile Court Department on September 14, 1994.

The case was heard by *Stephen M. Limon,* J.

*R. Susan Dillard,* Committee for Public Counsel Services, for the child.

*Katherine M. Potter* for Department of Social Services.

*Susan F. Drogin* for the father.

*Margaret M. Geary* for the mother.

*Jacqueline Y. Parker* for National Association of Counsel for Children, amicus curiae, submitted a brief.

KASS, J. Fitness of the biological parents is not an issue in this appeal from a decree under G. L. c. 210, § 3, dispensing with consent to adoption of a minor. Their unfitness, as determined by the Juvenile Court judge, is conceded. Rather, the issue is the correctness of the choice by the judge of a plan for adoption proffered as an alternative to that proposed by the Department of Social Services (DSS).

---

[1]The names of the child, his sister, and his foster mother are fictitious.

DSS had proposed adoption by the foster mother, Enid, with whom the three year old minor, Hugo, had resided for something more than a year. Enid is the mother, by adoption, of Hugo's five year old sister, Gloria. The judge favored a plan for adoption, proffered by the biological parents, that placed Hugo with a paternal aunt in New Jersey. The Juvenile Court judge made extensive, careful findings and wrestled with what he identified as a "heart wrenching" choice. We respect his view, as we are bound to do. *Petition of New Bedford Child & Family Serv. to Dispense with Consent to Adoption*, 385 Mass. 482, 488-489 (1982). In the final analysis, however, we are persuaded that the necessarily speculative benefits of the placement with the aunt are outweighed by the inevitable harm Hugo would suffer by removal from a home environment where he has done well, through which he is linked to medical and educational support services, and where he lives with his sister, upon whom he depends to a remarkable degree. We reverse so much of the decree as deals with the plan of adoption.

*Facts.* Hugo was placed in foster care three days after he was born. Placement in Enid's home, where his sister Gloria lived, was not then possible because there was no room there. When he was two, DSS transferred Hugo's placement to Enid, who now had room for him. The transition was not easy. This was characteristic of Hugo, who reacted badly to any change. For example, moving his car seat from the front to the back of a car sent him "off the wall."

From the start, Hugo's was not an easy life. He may have been injured by his biological mother's ingestion of cocaine during pregnancy. At age one he was identified as failing to thrive and was introduced to early intervention child development services that dealt with delayed development of his motor skills, speech, self-care, social skills, and emotional control. At the time of trial, Hugo still had "weight problems" and insufficient development, for his age, of speech and motor skills. He continued to be emotionally fragile.

As previously noted, Hugo prospered in Enid's home where, in addition to sister Gloria, there were two other foster children. Enid attended conscientiously to Hugo's mental and physical health needs, which, in his case, involved escorting him to a fair number of regularly scheduled intervention services. She also attended conscientiously to basic needs of clothing and feeding. Apart from reading to Hugo regularly, Enid did little of

her own devising to improve his speech or accelerate his development. Hugo calls Enid "Mommy," and has bonded to her. He goes to her for comfort. Considering her own tender age, Gloria is impressively attentive to and supportive of her little brother. Hugo goes to Gloria for support and Gloria translates for him when his speech is unclear. The bond between the siblings is very close.

In light of those facts, the case for the DSS plan of adoption with Enid was that it confirmed a custodial arrangement that was not "broke" and it would be a mistake to "fix it." In addition, and we shall discuss this further, a change would infallibly traumatize an already fragile child.

The case for placement with the aunt was that she had herself raised a child who had suffered from speech and other developmental and physical handicaps. That child was now fifteen and one-half years old, and, by reason of the aunt's close attention to his needs, had made progress in his development, although his school record showed below average achievement. The aunt was employed, and she lived with a fiancé who was also employed. The aunt could concentrate on Hugo's special needs in a way that Enid, who was responsible for two other foster children as well as Gloria, could not. By reason of her experience and demonstrated ability as an advocate for a child, the aunt was likely to afford Hugo a chance for greater improvement in speech, learning, social integration, and general mental development. As for the damage done by the separation, time was likely to heal the wound.[2]

To buffer the hurt of separation, the judge, in the adjudication portion of his memorandum of decision, ordered that the decree of adoption should incorporate an agreement of the custodial parent (i.e., the aunt) to make reasonable provisions for Hugo to have contact with his sister Gloria and his foster mother, Enid, and with the biological mother or father, if, in Enid's opinion, the "mother and father are sober and mother is taking her medications and keeping her mental illness under control."

*Discussion.* Our attitude toward the trial judge's decision is one of deference. See *Custody of Eleanor*, 414 Mass. 795, 799 (1993). *Adoption of Quentin*, 424 Mass. 882, 886 (1997). *Adoption of Mario*, 43 Mass. App. Ct. 767, 773 (1997). We add that our attitude is also one of respect for the care and patience that

[2]By the time of trial, his aunt had met Hugo four times.

the judge displayed throughout the proceedings. Indeed, we do not quarrel with the detailed findings of fact made by the trial judge and the credit and weight he gave to the evidence that came before him. See *Custody of Eleanor*, 414 Mass. at 799 ("Judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference"). In the application of the findings to the law as announced in the cases and the statutes, however, an appellate court has a role to play. See *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976) (facts as found by trial judge are accepted as true, unless clearly erroneous; but appellate court "must examine the legal standard applied to the facts found in order to assure that the ultimate findings and conclusions below were consistent with statutory norms"). See also *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 512 n.8 (1988). Cf. *Custody of Eleanor*, 414 Mass. at 800-801. On that examination, we arrive at a different conclusion.

Although it retreated from that position at oral argument, DSS, in its brief, questions whether a judge sitting on a petition to dispense with consent to adoption has authority to dictate a plan of adoption that differs from that proposed by DSS or whatever agency may have brought the "210:3" petition. The authority to order an alternate plan is implicit in the authority to approve or disapprove a plan in accordance with evidence presented. See *Petition of the Dept. of Pub. Welfare to Dispense with Adoption*, 376 Mass. 252, 262 n.2 (1978); *Petitions of the Dept. of Soc. Serv. to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 120, 124 n.11 (1984) (judge must give equal consideration to plan proposed by the parent); *Petition of the Dept. of Soc. Serv. to Dispense with Consent to Adoption*, 22 Mass. App. Ct. 62, 68-69 (1986) (trial judge should evaluate competing custody or adoption plans for child through "evenhanded, proper assessment of all the facts"). We do not imagine that the Legislature intended that if a judge did not approve the adoption plan presented by the petitioner, that it was necessary to return to "Go" and start the proceedings all over again.

That Hugo had formed a strong bond with Enid and with Gloria was not to be taken lightly. The statute, G. L. c. 210, § 3(vii),[3] expressly recognizes the undesirability of breaking a bond with a substitute caretaker. The statute gives guidance

---

[3]General Laws c. 210, § 3(vii), in connection with the finding of parental fitness, provides that a factor to take into account is that "because of the lengthy absence of the parent or the parent's inability to meet the needs of the

about resolving the tension, when determining the best interests of the child, between ties to and claims of a biological parent and ties to a substitute caretaker. See, e.g., *Adoption of Nicole*, 40 Mass. App. Ct. 259, 262 (1996); *Adoption of Katharine*, 42 Mass. App. Ct. 25, 30 (1997). In the instant case, there is no biological parent tugging at the other end of the rope. The reasons for severing the bond that the child has established with the substitute caretaker must, therefore, have exceptional force. Similarly, court decisions have recognized the desirability of keeping siblings together. See *Care and Protection of Three Minors*, 392 Mass. 704, 714 (1984); *Ardizoni v. Raymond*, 40 Mass. App. Ct. 734, 738 (1996) (generally favoring the placement of siblings under one roof). The importance of the sibling connection is particularly marked in this case because, as the judge found, Hugo had formed not merely an emotional but also a supportive attachment with his sister Gloria.

Bonds to his foster mother and sister were not the only significant connections in Hugo's universe. Because of his needs, he was tied into a network of doctors, child development specialists, speech therapists, and children's groups which had elements of familiarity for Hugo. For a little boy who was found to be peculiarly unable to cope with change in his life, these connective threads were significant supports. That Hugo's developmental progress would stall and that, indeed, he would regress upon separation from Enid and his sister is uncontested on the record and found to be fact by the trial judge.

The alternative adoption plan with the aunt in New Jersey speculates on work with Hugo by the aunt that is so exceptional that it will overcome Hugo's immediate psychic crash following separation and will move him on to superior progress. That speculation is not without some basis in the evidence, but it is speculation all the same. The aunt's plans are, after all, aspirational rather than demonstrably sound or even reduced to any particular detail. Whatever success she enjoyed with her own son did not have to overcome in the first instance a rupture of the sort that the alternative plan imposes on Hugo. Bereft of the familiarity of his "mommy," his sister, and the members of his

child, the child has formed a strong positive bond with his substitute caretaker; the bond has existed for a substantial portion of the child's life; the forced removal of the child from the caretaker would likely cause serious psychological harm to the child; and the parent lacks the capacity to meet the special needs of the child upon such removal."

external support system, Hugo in New Jersey would confront new physical surroundings, a new substitute parent, and a wholly new crew of external care providers in unfamiliar surroundings. We do not think that the cases, which urge the best interests of the child as the basis for decision,[4] support approval of a plan so risk-laden when DSS, as here, or a licensed child care agency, has recommended an advantageous, reasonable, and attainable plan of adoption.

It does not answer the difficulty that the judge provided for continuing contact between Hugo and Enid. With 300 miles between where Enid lives and the prospective New Jersey home the reality of such contact is implausible and its benefits doubtful.

We conclude that the benefits of the placement with the aunt are uncertain and intangible and cannot outweigh the certain damage that will flow from Hugo's removal from his current foster home. On the basis we have decided the case, it is not necessary to consider the challenge mounted by DSS and Hugo to the qualifications of one of the expert witnesses.

So much of the decree as orders implementation of the plan for adoption by the aunt is vacated. There shall be substituted an order for implementation of DSS's plan for adoption by the foster mother. In light of this decision, the Juvenile Court judge may wish to reconsider whether any order for contact with the biological parents is in the interests of the child.

*So ordered.*

---

[4]See *Petition of New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975); *Adoption of Mary*, 414 Mass. 705, 710 (1993); *Adoption of Mario*, 43 Mass. App. Ct. 767, 770 (1997).